## Rooney's Estate

*Raymond V. John*, for petitioner.

LADNER, J., March 15, 1940.—William J. Hamilton as escheator presents the petition to this court which is entitled "Petition for Leave to Sell Real Estate". The prayer of the petition is that this court, pursuant to authority granted by the Act of May 2, 1889, P. L. 66, authorize him to make private sale of escheated real estate to the parties named. The form of decree annexed is

drawn so as to authorize the escheator to sell and convey the described premises.

From the petition it appears that the real estate in question is part of the estate of Charles P. Rooney, deceased, decree of escheat being entered by adjudication confirmed October 16, 1939. The records of this court disclose, however, that an appeal is pending by some of the parties who claim to be next of kin. Questions have been raised concerning the power of this court to decree a private sale of escheated property and of the proper practice in the premises. We deem it desirable therefore to express our views on these questions for the benefit of the profession.

The power of this court to supervise or direct the sale of real estate of an intestate dying without kin or spouse rests on three statutes which may apply under the varying circumstances.

1. Section 24 of the Intestate Act of June 7, 1917, P. L. 429, as amended by the Act of April 18, 1923, P. L. 70, 20 PS §137, by which the Commonwealth, in a sense, is made the ultimate heir, and inherits, so to speak, the net estate in default of kindred and spouse of an intestate.

2. The Act of April 21, 1921, P. L. 216, 27 PS §381, which supplements the Act of May 16, 1919, P. L. 169, 27 PS §331, now largely supplied by The Fiscal Code of April 9, 1929, P. L. 343, sec. 1301, 72 PS §1301 et seq., which requires the payment into the State Treasury *without escheat* of the proceeds of unclaimed property, real and personal, in possession of fiduciaries, defined so as to include executors, administrators, guardians and trustees.

3. The Escheat Act of 1889, supra, which regulates the appointment of escheators, escheat proceedings, and the sale of property *after* adjudication of escheat.

The comprehensive review of these acts and their purposes by Judge Reader in Lutton, Admr., v. Powell, 7 D. & C. 245, as well as by Judges Lamorelle and Van Dusen in Apsley's Estate, 8 D. & C. 345, make it unnecessary

again to cover that ground. It is enough to note that the power of this court with respect to sale of such real estate, though differently invoked, is the same under all three acts. This because the first act, above mentioned (section 24 of the Intestate Act, supra), directs the sale to be supervised by the court "in accordance with the laws . . . providing for the payment into the State Treasury of unclaimed funds in the hands of fiduciaries" —phraseology which constitutionally incorporates the sales provision of the second act, above mentioned: Lutton, Admr., v. Powell, supra, at page 252. The provisions in the second act, above mentioned (i. e., Act of 1921, supra), empowering the court to direct sale of real estate, are copied from sections 17 and 18 of the Escheat Act of May 2, 1889, P. L. 66. It follows then that our construction of the relevant provisions of the last-named act necessarily will apply to proceedings had under any of them.

We proceed to the consideration of the questions raised. The first is: Does this court have power to authorize a *private* sale of such real estate? The applicable provisions of section 17 of the Escheat Act of 1889 read:

"That at the expiration of thirty days from and after the filing of the final finding or adjudication in escheat, or the absolute confirmation of the same, the escheator may apply by petition to the court having jurisdiction of the proceedings in escheat, for an order directing the sale of all real estate found to have escheated, situate in the county where the escheat proceedings have been instituted, and the said court shall thereupon, if no valid cause be shown to the contrary, order and direct the administrator or executor of the person who has died last seized or possessed of said real estate . . . to sell said real estate, in such manner and form and upon such advertisement, as the court shall direct, and to execute and deliver a good and sufficient deed or deeds to the purchaser thereof".

Then follows a provision requiring the entry of security approved by the court "in at least double the value of the real estate . . . for the faithful application of the purchase money according to the decree of the court". Section 18 makes the title acquired by the purchaser absolute, etc., for the estate escheated, and provides liens, etc., shall be discharged with "like effect" as sales made by decree of the orphans' court, "for the discharge of the debts of decedents . . . under existing laws." By the same section it is also made the duty of the court to properly distribute the fund realized.

It is noted that the language of the act gives power to the courts to order the administrator or executor "to sell said real estate, in such *manner* and *form* and upon such advertisement, as the court shall direct". The words "manner" and "form" according to Webster's Dictionary are frequently used in the sense of "method" and "mode", and we believe that to be the sense in which they are used in this act. As *private* sale is but a method, mode, i. e., manner of selling, we possess the power to authorize it. Our interpretation of these words would seem to be confirmed by the fact that at the same session the legislature enacted a law (Act of May 9, 1889, P. L. 182), which granted this court the power to direct a private sale of decedent's real estate for payment of debts if in the opinion of the court a better price could thus be obtained —a power which previously this court lacked: Miller v. Spear, 21 W. N. C. 554. Private sale by order of court, and its advantages under certain circumstances, may well be regarded as having been in the legislative mind at the time the escheat act was enacted. If it be argued that our construction fails to give due weight to an implication of public sale to be drawn from the phrase "and upon such advertisement, as the court shall direct," we think it enough to say that implications cannot, in general, be admitted to overcome express language. Moreover, the reference to advertisement does not of itself imply public sale, especially as the requirement of advertise-

ment is not made mandatory but is made discretionary with the court.

This brings us to the consideration of the proper practice. We note that, while the application is properly made by the escheator under the Act of 1889, such application by the express terms of the act may only be made 30 days "from and after the filing of the final finding or adjudication in escheat, or the absolute confirmation of the same". Does the appeal operate to suspend the effect of the absolute confirmation of the adjudication in escheat? The only persons having a standing to object, viz., the appellants, have through their counsel expressly agreed to the granting of the petition. Moreover, the escheator, who is also the administrator, could in that capacity apply to this court for authority to sell real estate under section 24 of the Intestate Act, supra, as amended by the Act of April 18, 1923, P. L. 70. All of which makes further consideration of the effect of the appeal unnecessary.

The decree annexed to the petition does not conform to the act in that it would authorize the escheator to make the sale and execute the deed. While the order to compel an administrator to sell may be *applied for* by the escheator, the authority to sell and execute the deed by express terms of the act is to be given to the administrator or executor. Nor does subdivision (*f*) of section 1302 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1302f, make any change in this regard, for it requires the proceedings thereunder to follow the Act of 1889.

The decree is also faulty in that it does not provide security in conformity with section 17 of the Act of 1889. The security heretofore entered, conditioned for the faithful performance of his duties as escheator, does not meet the conditions for which security is required by the Act of 1889, as for instance, "the faithful application of the purchase money according to the decree of the court;" which may under certain conceivable circumstances require the payment of liens of certain kinds.

While we believe that the phrase "upon such advertisement, as the court shall direct," makes the advertisement discretionary with the court, and not obligatory, we, nevertheless, are of the opinion that its inclusion in the act is to insure the Commonwealth getting the best possible price and we ought to omit no step which will insure that result. We, therefore, direct public notice of the proposed sale be given in the same manner which section 16 (*m*) of the Fiduciaries Act of June 7, 1917, P. L. 447, requires in private sales for the payment of debts.

Leave is given to petitioner to withdraw his petition, correct the same, and file it in conformity with this opinion.